**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

THE STATE OF COLORADO, THROUGH THE
COLORADO NATURAL RESOURCES TRUSTEES,

      Plaintiff,

v.

SUNNYSIDE GOLD CORPORATION,

      Defendant.

---

## COMPLAINT

---

The State of Colorado ("State"), acting through the Executive Director of the Colorado Department of Public Health and Environment, the Executive Director of the Colorado Department of Natural Resources, and the Attorney General of the State of Colorado, who collectively serve as the Colorado Natural Resources Trustees ("Trustees"), file this complaint and allege as follows:

### NATURE OF THE ACTION

1. This is a civil action pursuant to Sections 107(a)(4)(C), 107(f), 113(f), and 113(g)(1) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9607(a)(4)(C), 9607(f), 9613(f), and 9613(g)(1), for the assessment of and recovery of damages for injury to, destruction of, or loss of natural resources of the State resulting from

the release of hazardous substances within the Bonita Peak Mining District Superfund Site ("BPMD").

## JURISDICTION AND VENUE

2.   This Court has jurisdiction over the subject matter of this action pursuant to CERCLA Sections 107(a) and 113(b), 42 U.S.C. §§ 9607 and 9613(b), and 28 U.S.C. §§ 1331 and 1345.

3.   Venue is proper in this District pursuant to CERCLA Section 113(b), 42 U.S.C. § 9613(b) and 28 U.S.C. §§ 1391(b) and (c).

4.   Sunnyside Gold Corporation ("SGC") is subject to the personal jurisdiction of this Court due to its substantial contacts with the State, including its operation of the Sunnyside Mine in the BPMD, located north of Silverton, Colorado.

## PARTIES

5.   Plaintiff, the State of Colorado, acting through the Trustees, has authority to bring this suit under CERCLA Sections 107(a)(4)(C) and 107(f)(1), 42 U.S.C. §§ 9607(a)(4)(C) and 9607(f)(1), to recover damages for the assessment of and damages for injury to, destruction of, or loss of natural resources under their trusteeship.

6.   Defendant SGC is a Delaware corporation registered with the Colorado Secretary of State with a principal address of 5075 S. Syracuse Street, 8th Floor, Denver Colorado 80237. SGC owns the Sunnyside Mine as well as neighboring and other properties within the BPMD.

7.   SGC is a "person" under Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

8.   SGC is an "owner or operator" of a facility under Section 101(20)(A) of CERCLA, 42 U.S.C. § 9601(20)(A), from which hazardous substances were released.

## GENERAL ALLEGATIONS

9.   SGC formed in 1985 and operated the Sunnyside Mine from 1986 until 1991. The Sunnyside Mine was one of Colorado's largest producing mines. Over the 118 years it was in operation, it produced more than seven million short tons of ore including gold, silver, lead, copper, and zinc. The Sunnyside Mine is one of several mines on Bonita Peak, and it is a part of the BPMD.

10. The Sunnyside Mine's main access portal, the American Tunnel, was used by SGC and prior operators to transport ore as well as mine drainage from the mine. After the Sunnyside Mine closed in 1991, water continued to drain from the mine and was carried through the American Tunnel to a water treatment facility in Gladstone, Colorado.

11. When SGC closed the mine, the American Tunnel was discharging about 1,700 gallons of acid mine drainage every minute. SGC developed a plan, which was approved by various state agencies, to seal the American Tunnel with bulkheads to block the drainage and impound the wastewater in the mine. The plan contemplated that the tunnel would fill with water until the mine pool reached physical equilibrium, a point at which the rate of rise of the mine pool would level off, and the only remaining drainage would be through seeps and springs. The Colorado Water Quality Control Division agreed in a 1996 Consent Decree that these seeps and springs would not be subject to a discharge permit under the Colorado Water Quality Control Act, Section 25-8-101, *et seq.* C.R.S.

12. In 1999, SGC reported that the mine pool within the Sunnyside Mine was at physical equilibrium. However, other mine networks within Bonita Peak, including the Gold King Mine, the Red and Bonita Mine, and the Mogul Mine, which were not owned by SGC, experienced

increased flows. Acid mine drainage from these mines, which had been relatively dry following extension of the American Tunnel, began to increase as result of the installation of the bulkheads within the American Tunnel.

13. Because it was no longer in need of a water treatment facility, in 2003, and following public notice and with the approval of the relevant state agencies, SGC transferred ownership of the Gladstone water treatment facility to Gold King Mines Corporation, the then-owner of the Gold King Mine. Unfortunately, Gold King Mines Corporation became insolvent. In short succession, the water treatment facility shuttered, the operator of the Gold King Mine began diverting untreated discharges into Cement Creek, and the Gold King Mine was acquired by San Juan Corporation. Water quality within the Upper Animas River Basin began to decline as a result of the untreated discharges.

14. Acid mine drainage from the Gold King Mine continued to increase in volume. By 2006, water was discharging from the Gold King Mine Level 7 adit at a rate of over 300 gallons per minute. In 2008, the Colorado Division of Reclamation, Mining and Safety ("DRMS") performed reclamation work at the Gold King Mine Level 7 adit using Gold King Mine Corporation's forfeited reclamation bond.

15. Beginning in 2014, EPA performed reclamation work at the Gold King Mine Level 7 adit that focused on removing a blockage in the adit caused by collapsed material about ten feet from the portal entrance. The blockage had led to concern that water might build up behind the collapsed material and cause a blowout.

16. On August 4, 2015, EPA began excavating the blockage. On the morning of August 5, 2015, pressurized water began spurting out from the mine tunnel. The flow quickly increased in

volume until it erupted. The release cascaded down into the North Fork of Cement Creek, then to mainstem Cement Creek, and ultimately into the Animas River.

17. Approximately three million gallons of acid mine water was released from the Gold King Mine and picked up heavy metals, including aluminum, iron, manganese, lead, copper, arsenic, zinc, cadmium, and a small amount of mercury and then flowed, uncontrolled, into the Animas River watershed. The contamination traveled down the Animas River and into the San Juan River, which travels through New Mexico and the Navajo Nation, and merges with the Colorado River at Lake Powell in Utah.

18. Historic mining activity has impacted the Animas River watershed. As part of its Superfund efforts, EPA conducted ecological risk assessments for both aquatic and terrestrial species. These assessments concluded that:

    a. "The chemical conditions in surface water from mainstem Cement Creek are highly toxic to fish";

    b. "The preponderance of evidence suggests that the fish community in mainstem Cement Creek (if present) would experience lethal stress under current conditions";

    c. "[T]he benthic invertebrate community is impaired in most sections of the Animas River, Cement Creek, and Mineral Creek";

    d. "Community surveys of [benthic macroinvertebrate ("BMI") communities] showed that many [exposure units] within the BPMD watershed were impaired" and "are likely affected by high metals concentrations in both the sediments and the waters that these organisms are exposed to in the BPMD," although "BMI

habitat was found to vary widely due to a large geographic area and variation in elevation";

e. "[L]arge sections of the BPMD do not currently support trout in large part due to toxic levels of metals and low pHs";

f. "[T]he highest risk to aquatic-dependent [terrestrial] wildlife living in the BPMD area is lead exposure"; and

g. "Smaller home-range receptors (e.g. insectivorous and omnivorous birds and small mammals) may be at risk from dietary exposure to elevated concentrations of metals" and "[p]lants and soil invertebrates may also be at risk from exposure to elevated concentrations of metals."

19. SGC's decision to install bulkheads in the American Tunnel, which ultimately led to the Gold King Mine release, contributed to the degradation of the Animas River watershed and damaged natural resources in the area.

20. The Trustees engaged a contractor to evaluate the scope of potential injuries to natural resources caused by release of hazardous substances from mines and drainage tunnels within the BPMD. The analysis included injuries caused by releases from the Sunnyside Mine and the American Tunnel, both of which were operated by SGC, and from the 2015 Gold King Mine blowout, which was caused in part by SGC installing bulkheads in the American Tunnel. This preliminary analysis concluded that injuries to natural resources within the BPMD caused by SGC have the potential to be significant.

21. Releases attributable to SGC's ownership, actions, non-actions or conduct within the BPMD, have caused injury to, destruction of, or loss of natural resources, and the State has

incurred and will continue to incur costs associated with assessing such injuries, destruction or loss. The Trustees may act on behalf of the public to restore or replace the natural resources injured, lost, or destroyed as a result of SGC's ownership, actions, non-actions or conduct within the BPMD.

## FIRST CLAIM FOR RELIEF: NATURAL RESOURCES DAMAGES

22. The allegations contained in the preceding paragraphs are incorporated herein by reference.

23. The releases of hazardous substances from the Sunnyside Mine, American Tunnel, and Gold King Mine have caused injury to, destruction of, or loss of natural resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the State.

24. SGC is liable under CERCLA Sections 101(32), 107(a)(4)(C) and 107(f)(1), 42 U.S.C. §§ 9601(32), 9607(a)(4)(C), and 9607(f)(1) for natural resource damages, including the costs of assessing injury.

## SECOND CLAIM FOR RELIEF: DECLARATORY JUDGMENT

25. The allegations contained in the preceding paragraphs are incorporated herein by reference.

26. CERCLA Section 113(g)(2), 42  U.S.C. § 9613(g)(2), specifies that in any action for natural resource damages, "the court shall enter a declaratory judgment on liability . . . for damages . . . that will be binding on any subsequent action or actions to recover further . . . damages."

27. The State is entitled to entry of a declaratory judgment that SGC is liable for natural resource damages, including assessment costs.

## PRAYER FOR RELIEF

WHEREFORE, the State requests that this Court enter an order and judgment:

1.   Awarding the State damages for injury to, destruction of, or loss of natural resources in Colorado and the loss of use of such resources, including the reasonable costs of assessing such injury, destruction, loss, or loss of use resulting from the release of hazardous substances;

2.   Declaring SGC liable for natural resource damages for injury to, destruction of, or loss of natural resources and the loss of use of such resources, including the reasonable costs of assessing such injury, destruction, loss, or loss of use resulting from the release of hazardous substances; and

3.   Awarding the State such other and further relief as the Court may deem just and proper.

Dated December 13, 2021.

Respectfully submitted,

PHILIP J. WEISER
Attorney General

*Mary Emily Splitek*
**MARY EMILY SPLITEK***
Assistant Attorney General
Hazardous and Solid Waste/CERCLA Unit
Natural Resources and Environment Section
Office of the Attorney General
1300 Broadway, Denver, CO 80203
Telephone: (720) 508-6453
E-mail: emily.splitek@coag.gov

Attorney for State of Colorado
*Counsel of Record

8