UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| In re: Gold King Mine Release in San Juan County, Colorado on August 5, 2015<br><br>*This Document Relates to:*<br><br>*No. 1:22-cv-00046-WJ-KK* | No. 1:18-md-02824-WJ |

## STATE OF COLORADO AND SUNNYSIDE GOLD CORPORATION'S JOINT MOTION AND SUPPORTING BRIEF TO APPROVE AND ENTER PROPOSED CONSENT DECREE

The State of Colorado ("Colorado"), acting through the Executive Director of the Colorado Department of Public Health and Environment, the Executive Director of the Colorado Department of Natural Resources, and the Attorney General of the State of Colorado, who collectively serve as the Colorado Natural Resources Trustees ("Colorado Trustees"), and Sunnyside Gold Corporation ("SGC") jointly move the Court to approve and enter the Proposed Consent Decree ("Proposed Consent Decree") lodged with the United States District Court for the District of Colorado in *The State of Colorado, Through the Colorado Natural Resources Trustees v. Sunnyside Gold Corporation*, No. 1:21-cv-03327 (D. Colo. filed December 13, 2020) ("Colorado Matter") and transferred to this Court.[1] *See* MDL Conditional Transfer Order (CTO-1) (MDL ECF No. 1419)[2]; Proposed Consent Decree, Colorado Matter (D. Colo filed Dec. 13,

---

[1] Case No. 1:22-cv-0046 (D. N.M.) was opened on January 20, 2022.
[2] References to "MDL ECF" are to documents as filed and numbered in this MDL Case No. 1:18-md-02824-WJ (D. N.M.).

1

2021). The Proposed Consent Decree is attached hereto as Exhibit 1.[3] This Motion is supported by the following brief and a proposed order is respectfully lodged with this Motion.

## BACKGROUND

Over the past four years, claims asserted by the State of New Mexico ("New Mexico"), the State of Utah ("Utah"), the Navajo Nation, and individual property owners against SGC and others, including the United States Environmental Protection Agency ("EPA") and EPA contractors, have been the subject of extensive litigation efforts in multidistrict proceedings before this Court ("MDL Matter"). The claims, based on tort law and the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, *et seq.* ("CERCLA"), relate to the blowout at the Gold King Mine located in Colorado on August 5, 2015 ("Blowout"), as well as other alleged releases of hazardous substances within the Bonita Peak Mining District Superfund Site ("BPMD") located in Colorado. Parties to the MDL Matter have filed over one thousand documents, produced several million pages of documents, and participated in more than one hundred depositions.

SGC eventually reached settlements with New Mexico, Utah, and the Navajo Nation regarding their respective claims, including claims brought under CERCLA. In addition, a Proposed Consent Decree between the United States, Colorado, and Mining Defendants was lodged in this case on January 20, 2022. Not. of Lodging of Consent Decree Regarding Claims Between the United States and the Mining Defs. (MDL ECF No. 1418, hereafter the "US-CO and Mining Defendants Consent Decree"). That agreement includes the settlement of Colorado's

---

[3] The Proposed Consent Decree was lodged with the Court at ECF No. 6 in the docket for the transferred matter, Case No. 1:22-cv-0046 (D. N.M.).

CERCLA claims other than for natural resource damages[4]. In the fall of 2021, Colorado and SGC entered into settlement discussions regarding resolution of Colorado's natural resource damages claim and Colorado eventually filed suit against SGC in the Colorado Matter. In the Colorado Matter, Colorado alleges injuries to natural resources caused by the Blowout at the Gold King Mine and other releases within the BPMD. Compl., Colorado Matter (ECF No. 1).[5] Pursuant to CERCLA, Colorado asserts claims against SGC for natural resource damages and declaratory judgment. *Id.* at 7, ¶¶ 22-27. The United States Judicial Panel on Multidistrict Litigation recently issued a Conditional Transfer Order transferring the Colorado Matter to this Court to be litigated in connection with the MDL Matter. MDL Conditional Transfer Order (CTO-1) (MDL ECF No. 1416).

To avoid the complication and expense of protracted litigation and the associated litigation risks, Colorado and SGC entered the Proposed Consent Decree that is the subject of this Motion. *See* Exhibit 1, Proposed Consent Decree at 3, ¶ 5. The Proposed Consent Decree is the product of extensive negotiations between Colorado and SGC and would fully resolve Colorado's natural resource damages claim against SGC and its corporate affiliates. The Proposed Consent Decree requires SGC to pay Colorado $1,600,000, allocated as follows: (a) $1,200,000 to settle Colorado's claims against SGC and its corporate affiliates for natural resource damages resulting from the Blowout; and (b) $400,000 to settle Colorado's claims

---

[4] Colorado was not a party to the original MDL proceedings but was a party to the settlement negotiations which lead to and is a signatory to the US-CO and Mining Defendants Consent Decree.
[5] References to "ECF" are to documents as filed and numbered in the transferred Colorado Matter, Case No. 1:22-cv-0046 (D. N.M.).

3

against SGC and its corporate affiliates for natural resource damages resulting from other alleged releases within the BPMD. *Id.* at 8, ¶ 11[6].

As required by CERCLA section 122(d)(2), 42 U.S.C. section 9622(d)(2), the parties provided public Notice of the Proposed Consent Decree and an opportunity to comment on it. The Public Notice is attached hereto as Exhibit 2. Five comments were received regarding the Proposed Consent Decree. These comments are attached as Exhibits 3-7. As discussed in more detail below, the concerns expressed in the public comments do not justify rejection of the Proposed Consent Decree. The Proposed Consent Decree between Colorado and SGC for settlement of Colorado's claims against SGC and its corporate affiliates for natural resource damages is fair, reasonable, and consistent with CERCLA's goals. It will enable the Colorado Trustees to fund projects to restore injured natural resources within the BPMD, with input from stakeholders. Accordingly, Colorado and SGC respectfully request that the Court approve and enter the Proposed Consent Decree.

## STANDARD OF REVIEW

CERCLA encourages the use of consent decrees as a means of restoring damaged natural resources, advancing public interests, and minimizing litigation. *See* 42 U.S.C. § 9622(a). Before being entered, proposed consent decrees must be reviewed and approved by the district court with jurisdiction over the proceedings. *See* 42 U.S.C. § 9622. A district court may not modify a proposed consent decree before entry; the district court must either approve or reject

---

[6] For the sake of clarity, the parties do not intend this agreement to provide contribution protection as to claims by Natural Resources Trustees for states other than Colorado for resources owned or controlled by those other Trustees in whole or in part.

4

the consent decree as agreed upon by the parties. *See Officers for Just. v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 630 (9th Cir. 1982).

The standard of review applied by the district court in reviewing proposed consent decrees is "highly deferential." *United States. v. Atlas Minerals & Chemicals, Inc.*, 851 F. Supp. 639, 648 (E.D. Pa. 1994). The district court "cannot second-guess the wisdom of the parties' decisions and should preserve their bargained-for positions whenever possible." *Id.* If a proposed consent decree is "fair, reasonable, and consistent with CERCLA's goals," it should be approved and entered by the district court. *See OCentro Espirita v. Bd. of Cnty. Comm'rs.*, 2013 WL 12304059, at *2 (D.N.M. 2013) (quoting *United States v. Colorado*, 937 F.2d 505, 509 (10th Cir. 1991)) ("[Consent decrees] must be 'fair, adequate, and reasonable,' and 'not illegal, a product of collusion, or against the public interest'."); *In re Tutu Water Wells CERCLA Litig.*, 326 F.3d 201, 207 (3d Cir. 2003) (citing *United States v. Se. Pa. Transp. Auth.*, 235 F.3d 817, 823 (3d Cir. 2000)) ("A court should approve a consent decree if it is fair, reasonable, and consistent with CERCLA's goals.")

The district court's review of proposed consent decrees "is informed by the public policy favoring settlement." *United States. v. Pacific Gas & Elec.*, 776 F. Supp. 2d 1007, 1024 (N.D. Cal. 2011). The "policy of encouraging early settlements is strengthened when [, as in this case,] a government agency charged with protecting the public interest 'has pulled the laboring oar in constructing the proposed settlement.'" *United States v. Montrose Chem. Corp. of Cal.*, 50 F.3d 741, 746 (9th Cir. 1995) (quoting *United States v. Cannons Eng. Corp.*, 899 F.2d 79, 84 (1st Cir. 1990)); *see also Sam Fox Publ'g Co., Inc. v. United States*, 366 U.S. 683, 689 (1961) ("[S]ound policy would strongly lead us to decline appellant's invitation to assess the wisdom of the

Government's judgment in negotiating and accepting the . . . consent decree, at least in the absence of any claim of bad faith or malfeasance."); *United States v. Chevron U.S.A., Inc.*, 380 F. Supp. 2d 1104, 1111 (N.D. Cal. 2005) (The court's "deference is particularly strong where the decree has been negotiated by the Department of Justice on behalf of an agency . . . which is an expert in its field."). The balance of competing interests reflected in a proposed consent decree involving the government "must be left, in the first instance, to the discretion of the Attorney General." *United States v. Bechtel Corp.*, 648 F.2d 660, 666 (9th Cir. 1981).

## DISCUSSION

**1.      The Proposed Consent Decree is procedurally fair and substantively fair.**

The fairness of a proposed consent decree must be evaluated in terms of both procedural fairness and substantive fairness. *United States v. Pioneer Nat. Res. Co.*, 452 F. Supp. 3d 1005, 1012 (D. Colo. 2020) (citing *United States v. Kerr-McGee Corp.*, 2008 WL 863975, at *5 (D. Colo. 2008) and *Cannons*, 899 F.2d at 86).

   a.      The Proposed Consent Decree is procedurally fair.

In evaluating the procedural fairness of a proposed consent decree, district courts analyze the parties' settlement negotiations and attempt to measure their candor, openness, and bargaining balance; whether they were conducted forthrightly, in good faith, and at arm's length among experienced counsel; and whether the negotiation process was "full of adversarial vigor." *Pioneer*, 452 F. Supp. 3d at 1012; *Cannons*, 899 F.2d at 86-87; *Tutu Water Wells*, 326 F.3d at 207; *United States v. Rohm & Haas Co.*, 721 F. Supp. 666, 680-681 (D.N.J. 1989); *United States v. Bunn*, 2020 WL 6798939, at *2 (D. Mont. 2020) (citing *Pacific Gas & Elec.*, 776 F. Supp. 2d at 1025) (quoting *United States v. Telluride Co.*, 849 F. Supp. 1400, 1402 (D. Colo. 1994))).

6

"Settlements achieved through extensive arms-length negotiations, and approved by all counsel and the agency charged with implementation of environmental statutes[,] enjoy a strong presumption of validity." *United States v. Hardage*, 750 F. Supp. 1460, 1491 (W.D. Okla. 1990), *affirmed.* 982 F.2d 1436 (10th Cir. 1992).

The Proposed Consent Decree between Colorado and SGC is the result of arms-length negotiations during which the parties were represented by experienced counsel. The negotiations were conducted in an open and forthright manner and provided Colorado and SGC with the opportunity to evaluate the strengths and weaknesses of their claims and defenses. The parties, through counsel, debated the facts of the case and their differing legal positions. In the end, Colorado and SGC substantively negotiated to reach a compromise, including with respect to the Proposed Consent Decree, which was ultimately approved by SGC, the Colorado Trustees charged with recovering damages to Colorado's natural resources, and their counsel. The negotiations were conducted in good faith, with parties of equal bargaining power, and there was no collusion before, during, or after the negotiations.

The public comments submitted on the Proposed Consent Decree raised some questions about the process which produced the Proposed Consent Decree. Many of these comments address items outside the scope of the Proposed Consent Decree.

John Wright and the BPMD Citizens Advisory Group ("CAG") submitted that it was difficult to comment on the Proposed Consent Decree without a copy of a separate proposed consent decree for CERCLA response costs beyond natural resource damages. Ex. 6. The BPMD CAG also indicated that the group found the parameters and basis for the development of the Proposed Consent Decree to be unclear. Ex. 3.

The Proposed Consent Decree before the Court only addresses Colorado's natural resource damage claims against SGC and its corporate affiliates. It does not resolve Colorado's natural resource damage claims against other potential defendants who caused releases in the BPMD. The broader US-CO and Mining Defendant Consent Decree settles separate claims and was only mentioned to provide context. The two agreements are not dependent on each other. The Proposed Consent Decree is specific to the natural resource damages being recovered by Colorado from SGC and its corporate affiliates. It does not cover, and is not intended to cover, other CERCLA response costs or other natural resource damages incurred by Colorado, or any other party, in the BPMD. Nor does it address damages that may be recoverable by individuals from the United States through the Federal Tort Claims Act or other means. It appears these comments are more properly directed to those consent decrees addressing CERCLA response costs, particularly those comments that noted the need to review and evaluate the settlement amount in the consent decree proposed between the United States, Colorado, and Sunnyside Gold Corporation. The US-CO and Mining Defendant Consent Decree is available for separate review and parties are able to submit comments regarding the terms of that agreement. *See* Fed. Reg. Vol. 87, No. 18 (January 27, 2022).

Additional comments addressed discrete issues. Tom Schillaci suggested that the settlement reflected in the Proposed Consent Decree is with the wrong entity and that EPA ought to be paying the $1.6 million dollars. Ex. 4. He also commented that EPA ought to resolve the claims submitted under the Federal Tort Claims Act. *Id.* Neither of these comments justify rejecting the Proposed Consent Decree. La Plata County raised questions about the breadth of the settlement and the release of all natural resource damages. Ex. 7. The covenants in the

Proposed Consent Decree are of standard breadth and reflect a negotiated resolution of disputed claims. The Proposed Consent Decree resolves only Colorado's claim for natural resource damages against SGC and its corporate affiliates and not Colorado's claims against any other potentially responsible party.

James Wilkes questioned how to determine if the dollar amount was fair or adequate from reviewing a consent decree and raised questions about his own Federal Tort Claims Act submission for damages to the EPA. Ex. 5. Those possibly legitimate concerns do not merit rejection of the Proposed Consent Decree and are appropriately directed to the EPA. The settlement between Colorado and SGC does not address private tort claims or damages, as the Colorado Trustees do not have authority to bring or settle such claims.

This case is uniquely complex based on its history, underlying facts, and novel legal issues. Colorado and SGC substantively negotiated to reach a compromise, considering these issues and the focus of the matters addressed in the Proposed Consent Decree. The negotiations were undertaken in good faith and with proper consideration to the nature of the agreement. The Proposed Consent Decree therefore meets the procedural fairness requirement.

    b.    <u>The Proposed Consent Decree is substantively fair.</u>

"Substantive fairness requires that the terms of [a proposed] consent decree [be] based on 'comparative fault' and apportion liability 'according to rational estimates of the harm each party has [allegedly] caused'." *Tutu Water Wells*, 326 F.3d at 207 (quoting *Se. Pa. Transp. Auth.*, 235 F.3d at 823). "As long as the measure of comparative fault . . . is not arbitrary, capricious, and devoid of rational basis, the district court should uphold it." *Id.* "A [proposed] consent decree only need be 'based on a rational determination of comparative fault, . . . whether or not [a

9

district court] would have employed the same method of apportionment'." *Id.* "With respect to substantive fairness, the [district court] does not determine whether 'the settlement is one which the court itself might have fashioned, or considers ideal.'" *Pacific Gas & Elec.*, 776 F. Supp. 2d at 1025 (quoting *Cannons*, 899 F.2d at 84). "The court need only be satisfied that the decree represents a 'reasonable factual and legal determination'" and reflects a reasonable compromise of the litigation. *United States v. Oregon*, 913 F.2d 576, 581 (9th Cir. 1990) (quoting *U.S. v. Miami*, 664 F.2d 435, 441 (5th Cir. 1981)); *see also Rohm & Haas Co.*, 721 F. Supp. at 685.

The Colorado Trustees in this case engaged a contractor with expertise in natural resource damages to analyze the scope of potential damages to Colorado's natural resources caused by alleged releases of hazardous substances from mines and drainage tunnels within the BPMD. Compl. at 6, ¶ 20, Colorado Matter (ECF No. 1). The initial analysis included an assessment of natural resource damages allegedly caused by the Blowout at the Gold King Mine and other releases within the BPMD and concluded that: 1) they had the potential to be significant; and 2) SGC was a potentially responsible party ("PRP"). *Id.* Colorado contends SGC is responsible, in part, for these releases and the associated natural resource damages because SGC installed bulkheads in the American Tunnel which allegedly contributed to the Blowout and because SGC owned and operated other facilities within the BPMD where unpermitted releases occurred over time. *Id.*

SGC contends the baseline conditions of natural resources within the BPMD were already significantly degraded when SGC began its operations in the BPMD and that SGC never owned any interest in the Gold King Mine, never operated the Gold King Mine, and did nothing to cause the Blowout. SGC contends the Blowout was caused by the negligence of the EPA and

the EPA's contractors, as acknowledged by the EPA when it initially accepted responsibility for the Blowout.  *See* EPA, *Emergency Response to August 2015 Release from Gold King Mine* (available at https://www.epa.gov/goldkingmine) ("EPA takes responsibility for the Gold King Mine release and is committed to continue working hand-in-hand with the impacted local governments, states and tribes.").  SGC contends the installation of bulkheads in the American Tunnel restored the natural hydrology of the region and there is no evidence that any of the water impounded inside the Sunnyside Mine after installation of the bulkheads was ever released or that it otherwise contributed to the Blowout.  Finally, SGC contends that it had strong defenses to the claims, including those based on the 1996 Consent Decree between SGC and Colorado.

The legal arguments of both parties have strengths and weaknesses.  The terms of the Proposed Consent Decree between Colorado and SGC represent a rational apportionment of comparative fault based on the parties' respective litigation positions.  It also reflects the parties' desire to avoid costs associated with further development of factual issues, including what baseline conditions existed prior to SGC's operations in the BPMD, whether SGC was in compliance with relevant permits at all times during its operations, and SGC's alleged responsibility for the Blowout.  It is possible that those associated costs could exceed the amount agreed to in the Proposed Consent Decree with the outcome unclear. Settlement will ensure that funds are spent on restoration of the injured natural resources, not on further litigation.

The Proposed Consent Decree is also informed by SGC's previous settlement with New Mexico which allocated $1,000,000 to natural resource damages resulting from the Blowout. (MDL ECF No. 1287 at 10). The Colorado Trustees and their counsel determined the agreed

11

upon settlement is a reasonable compromise of the litigation, as did SGC and its counsel. The Proposed Consent Decree thus meets the substantive fairness requirement.

**2.      The Proposed Consent Decree is reasonable.**

To determine if a proposed consent decree is reasonable, three factors are taken into consideration: (a) whether the proposed consent decree will result in a cleaner environment; (b) whether the proposed consent decree will adequately compensate the public for the anticipated costs of restoring the natural resources in question; and (c) whether the proposed consent decree reflects the relative strength of the parties' litigating positions. *See Pioneer*, 452 F. Supp. 3d at 1012; *Comm'r. of the Dep't of Plan. & Nat. Res. v. Century Aluminum Co.*, 2012 WL 446086, at *8-9 (D.V.I. 2021).

The Proposed Consent Decree between Colorado and SGC will result in a cleaner environment and adequately compensate the public for the anticipated costs of addressing the natural resource damages in question, while also reflecting the relative strength of the parties' litigation positions. The Proposed Consent Decree gives the Colorado Trustees $1,600,000 to fund projects to restore injured natural resources within the BPMD, an amount that is reasonable when compared to previous natural resource damages settlements and the parties' respective litigation positions. The Colorado Trustees will distribute funds through a public process after consultation with regional stakeholders, including local governments and not-for-profit groups. *See* Exhibit 2, Public Notice at 1. The Proposed Consent Decree will allow restoration activities to begin in the near term, once a restoration plan is finalized, and will lead to a more expeditious recovery of injured natural resources than an alternative solution involving additional assessment

costs and protracted litigation. In light of these considerations, the Proposed Consent Decree is reasonable.

**3.      The Proposed Consent Decree is consistent with CERCLA's goals.**

The primary goals of CERCLA are to respond to environmental problems resulting from the release of hazardous substances promptly and effectively and make those responsible for the problems bear the associated costs. *See Cannons*, 899 F.2d at 90-91; *Rohm & Haas*, 721 F. Supp. at 680; *United States v. ASARCO, Inc.*, 814 F. Supp. 951, 955 (D. Colo. 1993); *SC Holdings, Inc. v. A.A.A. Realty Co.*, 935 F. Supp. 1354, 1361 (D.N.J. 1996). To accomplish these goals, CERCLA encourages the use of settlements to reduce litigation expenses. *See Cannons*, 899 F.2d at 87 ("The reality is that, all too often, litigation is a cost-ineffective alternative which can squander valuable resources, public as well as private.") The benefits of settlement and reduced litigation expenses outweigh the downside of a less than full recovery, as the earlier a settlement can be reached, the earlier the environmental restoration can be funded and commenced.

In accordance with CERCLA's goals, the Proposed Consent Decree between Colorado and SGC promotes prompt and effective restoration of the natural resource damages in question. By settling, the parties have reduced litigation expenses and can redirect their efforts accordingly. This goal is supported by the comment submitted by the BPMD CAG, indicating they hoped settlements would "reduce the number of legal and liability issues" so that resources can be used to restore the injured natural resources. Ex. 3. The Proposed Consent Decree will enable the Colorado Trustees to fund projects to restore, replace, rehabilitate, and/or acquire the equivalent natural resources that are alleged to have been injured by releases of hazardous

substances within the BPMD.  By resolving the claims and defenses at issue without risking the uncertainty and delay associated with complex litigation, the Proposed Consent Decree ensures that significant funds will be available to conduct timely restoration activities.  The Proposed Consent Decree is therefore consistent with CERCLA's goals.

## CONCLUSION

The Proposed Consent Decree between Colorado and SGC is fair, reasonable, and consistent with CERCLA's goals.  Accordingly, Colorado and SGC respectfully request that the Court approve and enter the Proposed Consent Decree in accordance with 42 U.S.C. § 9622.

Dated January 31, 2022.

Respectfully submitted,

CROWLEY FLECK PLLP

By /s/ *Neil G. Westesen*

Neil G. Westesen (*admitted pro hac vice*)
1915 South 19th Street
PO Box 10969
Bozeman, MT 59719-0969
Telephone: (406) 556-1430
Facsimile: (406) 556-1433
nwestesen@crowleyfleck.com

Jeffery J. Oven (*admitted pro hac vice*)
Pamela C. Garman (*admitted pro hac vice*)
490 North 31st Street, Suite 500
PO Box 2529
Billings, MT 59103-2529
Telephone: (406) 252-3441
Facsimile: (406) 252-5292
joven@crowleyfleck.com
pgarman@crowleyfleck.com

*Attorneys for Sunnyside Gold Corporation*

>PHILIP J. WEISER
>Attorney General
>
>By /s/ *Mary Emily Splitek*
>
>Mary Emily Splitek (*admitted pro hac vice*)
>Assistant Attorney General
>Hazardous and Solid Waste/CERCLA Unit
>Natural Resources and Environment Section
>Office of the Attorney General
>1300 Broadway
>Denver, CO 80203
>Telephone: (720) 508-6453
>emily.splitek@coag.gov
>
>*Attorneys for The State of Colorado*

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2022, the foregoing was filed via the U.S. District Court of New Mexico's CM/ECF electronic filing system and a copy was served upon all counsel of record via the CM/ECF.

>/s/ *Neil G. Westesen*
>Neil G. Westesen